Arguments not to exceed 30 minutes per side. Ms. Henry, you may proceed for the appellant. Good afternoon. Good afternoon. And may it please the court. My name is Kelly Henry and together with my co-counsel, Ms. Kimberly Hoddy, Mr. David Esquivel, Ms. Angela Lasley and Ms. Ashley Thompson, it is an honor and a privilege to present argument on behalf of my client, Mr. William Glenn Rogers. I would like to reserve five minutes for rebuttal, Your Honor. Thank you. Chief Judge Sutton and Your Honors, I would like to focus my the court is well familiar with all the briefing and the record in the case. Given the short time we have to be together this afternoon, it would seem to me that it would be most useful if I were to begin my argument discussing why, under the re-litigation bar of the Anti-Terrorism and Effective Death Penalty Act, Mr. Rogers is, in fact, entitled to de novo review and ultimately penalty phase relief. Next, and if time allows, I would like to discuss why, because of the way the trial counsel's obligations in the State of Tennessee continue through the motion for new trial stage, no expansion of Martinez v. Ryan is required in order to evaluate a procedurally defaulted claim at the motion for new trial stage. And that, in fact, my opponent appears to have even retreated from the argument that there was some sort of circuit split in reality where this court, to adopt my opponent's position, would create a circuit split. And then finally, again, time allowing, I would like to discuss why due process and fundamental fairness requires this court not address the impact of Shin on the substantial claims of ineffective assistance of counsel at penalty phase, given the fact that that decision, which is a sea change in habeas law, was decided after this case was briefed and argued. Perhaps quite properly, because the panel determined penalty phase relief was required in this case, further briefing was not requested in order to not further delay the proceedings. However, if penalty phase relief is not upheld, then it would be appropriate for us to have the opportunity for actual briefing, because the area of habeas law that existed prior to 2013, which I'm well familiar being 33 years in this work, provides multiple avenues for arguing why counsel, why Mr. Rogers was not at fault for any procedurally defaulted facts at the time of his case that was presented in post-conviction. Again, if time allows, that's where I'd like to go. But I think that it would be most useful for the court to discuss the intricacies of the AEDPA, because what Congress has done with AEDPA has created a labyrinth, which is confusing and difficult. And the courts have struggled with applying the Anti-Terrorism and Effective Death Penalty Act's various provisions throughout the years, resulting in a number of cases, some of which are confusing and some of which talk past each other. And I think that if we analyze the claim of ineffective assistance of counsel at penalty phase, by simply walking down the path of AEDPA, we see that there are various ways in which the ineffective assistance of counsel with respect to the scientific expert evidence does in fact lead to de novo review. And once we get to de novo review, then the prejudice question is, as this court recently reiterated in the Heit B. Parker case, whether or not at least one juror would have voted for life had the testimony and evidence that was presented in post-conviction be presented. But before going to the substance of what that post-conviction evidence was, I think we should start with the language of the statute itself. The Anti-Terrorism and Effective Death Penalty Act imposes a stoppel that the Congress created that limits the authority of a federal court to grant habeas relief when a federal constitutional violation has occurred. But there are various offerings. Why don't you go to the biggest mistakes post-trial counsel made? Just go to the things that really get your attention in terms of ineffective assistance. With respect to that situation in particular or penalty phase as well, Your Honor? Go where you want. Go wherever I want to go. We know Ed was sad to say. Certainly. So what we have here, Your Honor, is focusing specifically on the IAC claim with respect to the failure to investigate and cross-examine the state's sole expert and only witness of rape in post-conviction. Trial counsel was ineffective for multiple reasons and was found to be deficient by the state court. So if we back up and we look globally, what was the state's theory? The state's theory was that this murder was committed in order to conceal a rape. That was the core theory that the state presented at trial. And that theory is completely tethered to the testimony of Squibb, the expert from the TBI. And what trial counsel failed to do was investigate that scientific proof that was failed to discover that the testimony that Squibb provided to the jury was in fact false. And we know it's false from the testimony of Megan Clement in the post-conviction proceeding. Megan Clement, if we look at her exhibits, which are Exhibits 14 and 13 in the state court record, specifically ruled out the presence of semen. She said using her scientific test, she could conclude that there was no semen on the shorts. That's important. Because then when you look at her testing, and I should say something about Megan Clement. And that just to make sure I'm following this, that means the jury heard that. That it was inconclusive. The jury heard conclusive testimony from Squibb that there was semen. They did not hear that in fact there was no evidence of semen. Because trial counsel failed to challenge, investigate and challenge that testimony. And if that trial counsel testified, he didn't even think it was a big deal. It didn't occur to him to look at that testimony. Clement did testify at trial, correct? And she did testify that she tested four samples and couldn't be conclusive. She testified at trial about her inconclusiveness, but what she did not testify to at trial, but later testified to in post-conviction juxtapar, is that upon her evaluation of the testing, she concluded that the acid phosphatase was negative and that the P30 test was negative. Both of those were evidence that there was no semen, but then she went further and explained the difference between semen, spermatozoa and sperm heads. And what she said was because there were only sperm heads, but the P30 test was negative, she would conclude that there was no semen present on the shorts and the jury did not hear that testimony. Can I take you one step back from where you're now and one step past where the Chief wants you to be? I think, although he can correct me, is can you explain to me how, and I know you were going there, but how you get review under DeNovo when the state court, you concede in your brief that the state court reviewed this, so where do you get, how do you get to DeNovo? Three ways. And that was sort of where I was going with initially talking about Ed Pell, your Honor. So we get to DeNovo, the easiest way we get to DeNovo is we look at the decision, the reasoned decision of the Tennessee Supreme Court. And the Tennessee Supreme Court's reasoned decision on prejudice was that the standard for prejudice that was required was that Mr. Rogers would have to eliminate or completely discredit the testimony of... Is that doing exactly what Johnson told us not to in Penholster, which is you're fly-specking the opinion, because when you go to the Strickland standard, that's not what they say, right? That's in the announcement. They're talking about one piece of evidence vis-a-vis, or one claim vis-a-vis the totality of the evidence. And so, and your friend on the other side says, look, you had to do that because the jury had already found from a practical sense, the jury had found your client guilty of rape. Now you're saying it's ineffective assistance not to discredit that jury finding at the penalty phase, right? Of one half of one aggravated. Am I correct about that?  Almost. Tell me where I'm wrong. So where our argument goes here, Your Honor, is that, again, we talk about unreasonable application and clearly established federal laws. I'm going to answer your questions in three parts, and I apologize. I'll try to talk as fast as I can. Do the best part first. Just start with the best part. Well, the best part first is that the elimination and completely eradicate standard falls in line with the United States Supreme Court decision in Terry Williams. And we are exactly on point with Terry Williams with that use of that prejudice standard, which is too high when it was applied to the facts in this case. You can't just parrot the correct standard at the beginning when you're doing a general discussion, and then later when you're applying that standard, apply a different standard. The way I read this, and you should correct me because you're doing well at that, is that what they said is you wanted to discredit this one area. And it says, no showing that the defense would have been able to eliminate or completely discredit the state's proof that sperm heads were found in the crotch area. Right? So they said you couldn't get rid of that completely because everyone agrees some of them were found there. Right? Am I right about that? You are correct about that, but the analysis... Okay, wait. Now let me ask the second part, and then you can say it, I promise. That proof together, then they said, that proof together with substantial proof at trial that the petitioner was the last person to see the victim alive, leaves us confident of the jury's verdict. So what they're saying is, because you didn't discredit that, you haven't undermined our confidence in the jury's verdict. And that parrots right from what the Supreme Court says the standard is, from Strickland on down. Except for the use of the word completely discredit, which is a higher... So in a 60-page opinion, those two words are what you're hanging your hat on. The four words together also with Justice Bibbins referring also to the Lockhart v. Fretwell case in his discussion of the applicable U.S. Supreme Court law. Again, directly in Terry Williams, they used the Fretwell case, and the court said that was contrary to clearly established federal law. They said that the burden, the outcome determinative burden, which was essentially what was used, was contrary to clearly established federal law. It's also an unreasonable application of clearly established federal law. When you look at the prejudice inquiry and you say, and you limit the discussion only to whether or not you would have eliminated the finding of the aggravator, the state court did not engage in any analysis as to whether or not undermining that aggravator, causing doubt about that might have voted for life. That's what we're arguing here today. I'm not talking about whether or not... You agree at that point. At the point you're talking about, there was already this same jury, I'm correct, right? That found him guilty of rape. The jury found him guilty of rape, yes, your honor. And you're saying at the sentencing phase, they should have attacked that, and had they And again, I don't mean to continue to quibble, but where the attack should have come, should have come during the guilt phase, right? Whether or not this court can grant EDPA relief on the guilt phase is a separate question. It was still ineffective assistance of counsel at the guilt phase, or it was deficient performance, and that's the finding of the state court. That's not me. The state court found, the trial court found, that trial counsel was can consider all of the proof from the guilt phase and the penalty phase. The penalty phase does not exist in a vacuum. So the argument is, particularly if you can discredit this witness, and we talk about the presence of sperm heads, that's where Megan Clement's testimony becomes so important, and where the Tennessee Supreme Court's decision unfairly cabins the proof to only that portion of Megan Clement's testimony, and it's also important to remember, Megan Clement's not a defense-friendly expert. She's with a lab that the TBI relies on, and what she said was sperm heads without P30 equals no semen. No semen. Then you put in the study from the Canadian Journal of Forensic Science, and you put in Megan Clement's testimony, and I know you all are really busy, but I do commend you to go back and read all of Megan Clement's evidence, because she talks about how she was a part of a trial, where that study was in fact used, and where that defendant was acquitted simply on the basis of the study. It was that powerful, because Megan Clement was... The study that involved the evidence sitting there in the woods for four months? That, Your Honor, respectfully would go to why they can't get DNA. It doesn't go to why you would have sperm heads without semen or a positive P30 test. What the expert testimony from Megan Clement was... It's not possible that sitting out there for four months is going to affect those things? It could, Your Honor, but again, we are talking about what the expert testimony was, what the jury relied on in order to convict. And so in the minds of a juror, if you have an who comes in and says, as she did in post-conviction, that her testing indicates that it is more likely that those sperm heads came from transfer in the washing machine, and they certainly did not, did not establish the presence of semen, that changes the state's proof. And if we look at... Does that theory explain why they're all in the crotch area? Your Honor, actually, what the proof is, if you look at Exhibit 9, which is the diagram of the shorts and the bench notes of Squibb, what you'll see is that Squibb had findings around the waistband and also on the front of the thigh. They only tested what was in the gusset area of the shorts. They didn't test the other areas. And what Squibb testified to was that he thought he saw one sperm head elsewhere. And what this study in the Canadian science journal showed was that they did find evidence of sperm heads in the crotch area in the six panties involved in that testimony. And then what Clement testified to is that she had seen that test replicated again with sperm heads being present in the gusset area of the underwear without there being a nefarious or criminal motive. So the problem that we have... I thought the record as it comes to us here is that all or virtually all the sperm heads were found in the crotch area. And then we have a study where sperm heads are scattered all over the place. They're on the tag of the garment and that sort of thing. And I mean, the jury, the evidence from the jury was the sperm heads were in the crotch area. And I guess the question is, is there something now that would suggest to the jury that it was a coincidence that they were in the crotch area? The evidence, Judge Ketledge, again, I do mean to not be so difficult. No, I mean, not at all. You're here to tell us where we're mistaken. Exhibit nine was an exhibit that was before the jury. And so the jury did hear evidence that there were other concerning areas on the shorts. So it's not too far a call to say that when, if the jury... I thought it was one or two strays and not scattered. Am I wrong? Judge Ketledge's question related to the study and scattered. And I thought it was concentrated with a couple strays. Am I wrong about that? I cannot say with confidence that you are. I can't say with confidence that you aren't. That's basically what I'm saying. But yeah, I think what we can learn from, again, if I was cross-examining Squip, if you were cross-examining Squip, and you had this testimony from Megan Clement, and part of the cross-examination would be you only looked at the evidence in the gusset area of the shorts. You didn't test these other areas of concern. That's what the trial attorney should have done. That's the evidence the trial attorney should have put in front of the jury because you have to look at it, again, in the totality and particularly where, again, the science tells us that there is no way that this is semen because the P30 test, which is the test for the presence of a prostate-specific enzyme, was negative. And then when she did DNA testing, looking for Y-chromosome, there was no male DNA found in this sample from the gusset area. And that was all she was asked to look at. Nobody asked her to look at the rest of the shorts. So the absence, the concentration, of course, is consistent with the confirmation bias of Squip and with the confirmation bias of the prosecution. That's what they wanted to focus on. And they didn't look further. Those are arguments that could be made. Again, I'm not saying, Your Honor, that that means that you should grant relief on the guilt-innocence conviction because, as was discussed in the panel opinion, we can't establish prejudice because those convictions merged. That was the reason that the panel found we couldn't. Can I ask you a question on that though? It seems like it's a guilt-innocence argument and if it is, the prejudice analysis that the Tennessee court did, if you say it was limited to the guilt phase prejudice, why isn't it the same thing for the penalty phase? Because the penalty phase argument is, we're taking the rape conviction off the table. So why wouldn't it be de novo review? Because there is a considered opinion on prejudice because it's essentially the same analysis. I'll answer your question, Judge McBain, again in this way. Because the analysis of the evidence at the guilt phase was used using a prejudice theory that was contrary to and an unreasonable application of Strickland v. Washington, then we can presume that the court, that the Tennessee Supreme Court, used that same unreasonable application when it was evaluating the issue with respect to penalty phase and the aggravator and also the guilt phase. Sorry to interrupt, but so they did consider the prejudice, you're just saying they did it under the wrong standard so that when we look at it, I mean we would still say, well they get, it's not de novo review, right? We would just be questioning how they did the analysis. No, Your Honor, it is de novo review. That's what the Supreme Court said in the Terry Williams case and that's been the case law ever since. This isn't a situation of a Harrington v. Richter unreasoned opinion. You have a reasoned opinion and EDPA says when there's a reasoned opinion, if that opinion is an unreasonable application of clearly established federal law or contrary to clearly established federal law, then the review is de novo. You stop at that point and that's Panetti v. Quarterman, which my opposing counsel does not even address in their briefs. But the Supreme Court has been very clear that once 2254's relitigation bar has been overcome through the showing of an unreasonable application of clearly established federal law, that is how we get to de novo review. So that was the second way, Judge Nelvandian, that I was saying we get to de novo review in this case. The third way is the way that the panel discussed the issue, which is the way they looked at the record and they're smarter than I am. They concluded that because there was no discussion in the Tennessee Supreme Court's opinion about the weighing of the mitigating evidence against the new evidence that would have been, that should have been, and everyone agrees should have been presented to this jury, that at least one juror would have voted for life. So there are three different ways and it doesn't matter which way you get there, no matter how you get there, whether it was inadvertently overlooked, whether they just didn't address it on the merits, or whether they addressed it on the merits, you cannot presume that they used a different standard and that standard is contrary to Strickland, which is reasonable probability that at least one juror would have voted for life. That's the test, not whether or not we would have completely discredited Squibb's testimony. But Squibb's testimony was central, central to the decision and central to the case that the state presented in this matter. I see I have 2 minutes and 20 seconds remaining of my time and I'm happy to stay here and live in AEDPA. You all saw the demonstrative aid I tried to use and maybe you can just look at it and see what it's like to live in my head, but I'm happy to stay there if you have more questions or I'll move on to the motion for my trial. Let me ask you a question about the motion for new trial. Yes sir. Is there a constitutional right to counsel at the new trial stage that the Supreme Court has clearly established? I'm struggling with finding something on that. What the law is, is that there is a Tennessee law should govern the issue here. I also do not have a U.S. Supreme Court case that says that it does or it doesn't. The U.S. Supreme Court says you have constitutional right to trial counsel. Tennessee... At critical stages. And Tennessee defines the motion for new trial as a critical stage and Tennessee has found ineffective assistance of counsel at the motion for new trial stage and granted relief in state court criminal cases and so the Tennessee definition of what trial counsel's obligations are should govern much in the same way that the Trevino case governed the application of when Martinez applies and when Martinez doesn't apply. Martinez doesn't apply in every jurisdiction, have different methods of review. I mean, hasn't the Supreme Court though, it had a case in front of it back in 2015 where it had this question and said we're not deciding it. I mean, that suggests to me that it's not clearly established, right? I mean, I hear what you're saying. It seems like it's really important under Tennessee law. Maybe there are some claims that you have to bring on a motion for new trial, but until the Supreme Court says something more than just critical stage, I'm not sure we can say it's clearly established. Your Honor, and I answered your question, but then I now have to stop and realize you're mixing EDPA with procedural default analysis, which is completely different. Procedural default analysis is not tethered to clearly established federal law. I'm just trying to figure out whether there's a constitutional right to counsel at the motion for new trial stage. I mean, I don't know that the Supreme Court's ever said that. And they don't have to for purposes of an equitable exception to procedural default. My point here being that the Tennessee judges say that there is a right, and the Tennessee courts have granted Sixth Amendment relief for errors under the motion for new trial. And so the Third Circuit's decision in Richardson really gives us the cleanest analysis on how we should handle this, which is... But the Third Circuit, and I'm sorry, I see your time's up, but the Third Circuit decision in Richardson involved a failure to appear, whatever, counsel at sentencing. And it seems to me that you have a right to counsel at sentencing for sure. I'm not sure about new trial. I mean, there are Supreme Court cases about sentencing. There aren't Supreme Court cases about new trial motions. But the way the Tennessee law works, and the state does not engage with this analysis at all, is that your trial, your conviction actually isn't final in Tennessee until after the motion for new trial because the judge sits as a 13th juror, and also puts obligations on trial counsel to preserve issues for appellate review, which goes to the core concern of the court in Martinez. Thank you. Why don't we let the state engage with this argument? Thank you so much. Get your rebuttal. Good afternoon. Thank you, Your Honor, and may it please the court, Matt Rice on behalf of the warden. Petitioner is not entitled to habeas relief. Each of the three arguments presented to the en banc court fails. First, the state court reasonably rejected the serological evidence claim. Everyone agrees that there was sperm on the inside crotch of Jackie's shorts. Nevertheless, petitioner claims that there may have been some other clothing item with sperm on it that may have been washed with Jackie's shorts, and it just so happened that it transferred to a stained area on the inside crotch. That far-fetched prejudice theory does not create a substantial likelihood of a different sentence, and the state court was certainly not unreasonable in so holding. Do you agree that there was deficient performance? We have not contested the broad proposition that counsel was deficient with respect to the challenge to the serological evidence. We do not. Second, Your Honor, we think that the court should decline to extend Martinez v. Ryan. The Supreme Court has foreclosed any extension of that doctrine in Davila, in Shin, and in Martinez itself. And regardless, the reasoning and concerns of Martinez do not apply at the motion for new trial stage. And third, this court should not remand based off of Shin v. Ramirez. Even with the new evidence, the district court rejected petitioner's claim, so a remand makes very little sense. And moreover, petitioner has not even gestured at a viable theory for why petitioner would not be at fault for failing to develop this evidence. It's been 26 years since petitioner stalked, kidnapped, raped, and murdered Jackie Beard. This court should affirm the district court's judgment and bring these proceedings to an end. I'd like to start by addressing counsel's argument that there was an incorrect standard applied by the state court, because we vigorously disagree with that. The state court properly recognized the Strickland prejudice standard, and it applied that standard to the facts and the arguments that had been presented to it. Petitioner's theory of prejudice was that if counsel had attacked the serological evidence more, counsel could have undermined the proof of rape. But the only way for counsel to undermine the proof of rape was to discredit the sperm evidence. And both Clement and Squibb agreed that there was sperm on the inside crotch of Jackie's shorts. With that sperm on the inside crotch, you either had to discredit the finding of sperm, which they could not do, or you had to come up with some explanation as to why there was sperm on the inside crotch of a nine-year-old's shorts. And the best theory that petitioner's been able to come up with is this Canadian washing machine theory. And under that theory, petitioner argues that the jury would have speculated that there was an item of clothing with sperm on it, which as the state court recognized in its reasoned opinion, there was no evidence of that in the record. That the jury would have speculated that the sperm transferred between the clothing, and that it not only transferred, but it transferred to a stained area on the inside crotch. I'm aware of no evidence in the record that there was sperm throughout the shorts. Agent Squibb testified that he conducted an acid phosphate test on four stained areas of the inside crotch. He then performed a confirmatory microscopic examination of those four cuttings of the stained areas that revealed sperm heads in three of the four areas. So, your honor, we think that that is strong evidence that supports the state court's reasonable application of the Strickland standard. Well, the state court did misstate the test when it said that petitioner has not established that the jury's verdicts are unreliable as a result of this failure because there has been no showing that the defense would have been able to eliminate or completely discredit the state's proof. Your honor, we don't think that's an incorrect statement of the standard. The governing standard is the prejudice standard which was presented. That is an application of the prejudice standard to the facts and the arguments presented. Now, again, petitioner's argument was that he could have undermined the rape conviction. And what the state court was saying was, no, you can't because no one disputes. Even if counsel had evidence more, no one disputes that there is sperm on the inside crotch and your washing machine theory is not supported by any evidence. So, that was simply an application of the Strickland prejudice standard to the facts and the arguments that petitioner had made to the state court. Your honor, with respect to Clement's testimony, I want to be clear. Clement did not rule out that there was ever semen on the shorts. Chief Judge Sutton asked about the shorts being in the elements. There is testimony in the record with respect to the different degradation of the certain serological evidence. So, she simply stated that she was aware of this Canadian washing machine study and that when she conducted the acid phosphate test, she got a negative result. But she also acknowledged that she had deep respect for Squibb who had performed this analysis at the time of the trial. What about the P30 antigen test? Yes, the P30 antigen test is a test that detects a certain antigen associated with the prostate. They got a negative result on that. But as Megan Clement testified, when you're conducting this testing, you can either do an acid phosphate test with a microscopic examination to identify sperm, or you can do an acid phosphate test with a positive P30 test. So again, at most, this goes to whether you can verify the presence of semen on the shorts. There is no question that there was sperm on the inside crotch of the shorts and the only way that petitioner can show prejudice is through this Canadian washing machine study. The state court was not unreasonable in rejecting this study when there was no evidence to indicate that Jackie's shorts had been washed with another item containing sperm. So there was other evidence that was presented to the district court that would be very relevant to this. Well, your honor, the evidence that the brother of the victim masturbated in the underwear of his sister and that the laundry was done all together and that would tie in with the washing machine test. I mean, when you talk about a Canadian washing machine test, it sounds like this is a ridiculous thing that nobody should pay any attention to. But there was an interesting tie-in there, wasn't there? Well, your honor, I want to make sure that we're not mixing claims because under Cullen v. Penholster, with respect to the Strickland prejudice analysis, this court is very clearly limited to the record that was in the state court and this evidence is involving a separate claim and I'm glad to discuss why you can't consider that evidence either after Shin v. Ramirez. But with respect to the Strickland AEDPA analysis, there is zero question or binding Supreme Court precedent that you cannot consider that evidence. Now, I do want to touch on some of the questions that came up with Martinez v. Ryan. There is, to my knowledge, the Supreme Court has not held that there is a constitutional right to effective assistance of counsel at the motion for new trial stage. As your honor noted, it specifically declined to so hold in Marshall v. Rogers. This court in Reed v. United States, which we cite in our brief, suggested that there may not be such a right. But whether there's a right to effective assistance of counsel at the motion for new trial stage doesn't dictate whether this court should apply the Martinez exception. And I want to make a few points with respect to that. The Supreme Court has found that Martinez does not apply to ineffective assistance of counsel on appeal and many courts have treated the appeal as a critical stage of the proceedings. The key point here is that when Martinez talked about creating this equitable exception, it said that it was protecting a bedrock principle of effective assistance of counsel at trial. Well, the motion for new trial stage cannot be the bedrock principle that it was referring to because the court has refused to even recognize that as a critical stage of the proceedings, let alone a bedrock principle. But why wouldn't there be overlap between whether it's a critical proceeding for Sixth Amendment purposes and whether it would meet the Martinez exception? Let's say that we wanted to overlay that a little bit. Isn't it true in Tennessee you have to, there are some things like juror misconduct, you have to raise at a motion for new trial or you can't raise them. Isn't that critical in Tennessee? I mean, it may not be critical in another state, but in Tennessee it's critical, isn't it? I'd like to make two points on this, Your Honor. One, your hypothetical posits a situation where there's perhaps ineffective assistance of counsel after trial at the motion for new trial stage, and we think that falls outside the scope of what the Supreme Court protected in Martinez v. Ryan. But I do want to engage with the notion that there may be some need to extend Martinez to cover those claims because we don't think that that is actually correct. For one, Martinez talks about protecting the trial because that is where the defendant is presumptively innocent and is a judge guilty, which is not true when you get to the motion for new trial stage because there has been a verdict and a judgment of conviction sentence. But even if there were... How then do you respond to our Abdur Rahman case that holds that Martinez applies only to claims of ineffective trial counsel, ineffective trial counsel, and it does not focus on trial errors? Yes, Your Honor. Well, first of all, I'd say when I focused on trial errors, that's the Supreme Court's language in Martinez was focused on trial errors. I do think that the courts have been a little bit sloppy in referring to ineffective assistance of trial counsel claims and appellate counsel claims. The right here is the right to effective assistance of counsel that comes from the Constitution. And that right attaches at certain stages of the proceedings. It doesn't attach to everything that trial counsel does. But again, I don't think that it matters if this is actually an effective or a critical stage of the proceedings because in Davila, the appeal is undoubtedly a critical stage of the proceedings according to some courts. And Davila said Martinez does not extend to that scenario. But I do want to address the notion that there may be some claims that can only be raised in the motion for new trial because I do think there are a couple of limitations on that. One, you're talking about a very narrow window of when the facts necessary to make out the alleged claim would arise. It would have to be after the judgment of conviction because if it was before, it would be included in ineffective assistance of trial counsel. And it would have to be before the motion for new trial because if it were after that, then you have no claim of ineffective assistance with respect to the counsel at the motion for new trial stage. And not only that, you would have to have a situation where it would be waived for the failure to raise it at the motion for new trial stage. Because if there's no waiver, then this claim could be raised in post-conviction proceedings under Tennessee law. Does Tennessee have a very strict rule about the need to raise various claims at the new trial stage or else they are waived? Yes, Your Honor. And we think that the reasoning of Davila cuts against that argument, which is Davila stated that if an error was preserved at the trial itself, then you'll have at least one court that has ruled on the error. And that's what Martinez was concerned about. And if the error were not preserved during the trial itself, then you're not really in a different position when it comes to the motion for new trial. Because under Tennessee law, you have to both have a contemporaneous objection and raise it in the motion for new trial or you're under error review. So the motion for new trial, the reasoning of Davila maps on to the motion for new trial stage even with respect to this preservation issue. Doesn't it make sense given that you have the same lawyer at the new trial motion as you had at trial and that it is looking at exactly what was happening at the trial to call it part of the trial as opposed to calling it part of the appeal if you're going to draw a sharp dividing line with Martinez Trevino between appeal and trial? Well, we don't think that that's where the dividing line is, Your Honor. We think that it applies to the trial proceedings itself. We think that the trial ends when there is a verdict and a judgment of conviction and sentence. That's not just the kind of typical understanding of what a trial is. That's also consistent with Tennessee law. Is there a case that says that? I know that you said that the law was in your favor, but my understanding is there is a Fifth Circuit unpublished case and then a couple district courts, but the Third Circuit has taken the opposite viewpoint. Do you have another case that you wish to mention here from a court of appeals that's published? No, Your Honor. The Third Circuit has waited on this. The Fifth Circuit has come out on the opposite side of the allegation there. You just made the determination, but the only circuit court to thoroughly analyze the issue was the Third Circuit in Richardson. Isn't that correct? That's the only case that I'm aware of. I don't know that I would categorize it as a thorough consideration of the issue, Your Honor, but the Third Circuit did issue an opinion on this. I think it's wrong for a few reasons. First, the Third Circuit's decision came out before the Supreme Court forcefully reiterated the limitations of the Martinez exception in Shin v. Ramirez. Second, the Third Circuit in the Richardson decision did not engage with De Villa's focus on trial errors or Martinez's statement that they were focused on the stage of the proceedings where the defendant was presumptively innocent. Third, Richardson did not account at all for the serious harms that states would suffer if the Martinez exception is extended. I mean, the Supreme Court has been... Weren't you incorrect in saying that this court caused a circuit split if we agreed with the Third Circuit, and the Third Circuit may or may not have disagreed with the Fifth, but we did not cause a circuit split, did we? Well, Your Honor, I do think there was... If it's not a direct conflict, there's at least tension between this court's opinion and the approach that was taken by the Fifth Circuit and the approach that's taken by many district courts. When you create a circuit split, that means that all the circuits who've decided are going one way and you are going the other way. So that couldn't possibly have been creating a circuit split if the Third Circuit had already taken the same position that we did. Well, Your Honor, I... It could be exacerbated. Yes, I don't know. If a brief says create or add to the circuit split, I'm not exactly sure where you're pulling from the create. If it was in the petition, I would apologize because the Third Circuit has clearly already taken this position. I mean, we cited to that opinion, so... Do you think there... Here, Judge Larson had a question. Go ahead. Oh, I just want to know how much this matters, this Martinez point. I understand why it might matter very much to you going forward, but for purposes of this case, am I wrong to think that even if we thought the new trial motion could come under Martinez, Shin still blocks this evidence on which it would rely, so it can't matter to this petitioner? Your Honor, I think that's exactly right. I mean, I think we are very concerned about the possibility of extending the Martinez exception, but we attempted to provide this court with two off-ramps, both the Rule 2C argument and the argument with respect to the fact that there is no evidence to If this court would like to avoid the Martinez v. Ryan issue, those are certainly two viable paths for this court to take. I do want to... Judge Stranch, go ahead. The question here is about, also relies on the critical stage analysis in the state of Tennessee, and it seems to me, in looking at your briefing, there's a... You do take a narrow view of Martinez, but I don't think you really engage with what the critical stage is under the state of the law in the state of Tennessee. The Tennessee Supreme Court... Let me read it to you so I'm sure to get it correct. Yes, ma'am. The Tennessee Supreme Court's interpretation of their criminal rules of civil procedure is that counsel's abandonment of their client at such a critical stage, motion for new trial, of the proceeding results in the failure to preserve and pursue the available post-trial remedies, and the complete failure to subject the state to the adversarial appellate process. This is Wallace out of the Tennessee Supreme Court in 2003, and what strikes me about that language is it parallels what Martinez says, in which Martinez talked about the importance of trial counsel in their role in testing the prosecution's case, I quote, in preserving claims to be proceedings as justification for excusing post-conviction counsel's procedural default. That's the Martinez black letter law that exactly falls within the analysis of the Tennessee Supreme Court's statements regarding the motion for a new trial phase. So I don't see why you would be arguing that in the state of Tennessee, the motion for new trial is not, in fact, a critical stage. Well, Your Honor, as I argued with Judge, or had a discussion with Judge Nalbandian, we don't think it matters whether it's a critical stage of the proceedings or not. The appeal is a critical stage of the proceedings, and Davila says Martinez does not extend to ineffective assistance of counsel on appeal. But the Tennessee argument is precisely what Martinez says regarding that. So why don't we already have the Tennessee Supreme Court informing this decision by mimicking the, by including the very same language that Martinez includes, in order to show that this is an area that is critical, and that, and doesn't that have a key role in this litigation? I don't think so, Your Honor, because no matter what Tennessee law says, it is not the stage of the proceedings that Martinez was concerned about, which was when a presumptively innocent defendant is a judge guilty in sentence. That is not what happens at the motion for new trial stage. Second of all, the statements about preservation, as we just discussed, Davila rejects that exact argument. At the appellate level, but the question is where do you begin the appellate level? Is it at the notice of appeal? If it's at the notice of appeal, then why isn't the Third Circuit in Richardson correct? Well, Your Honor, it rejected it at the appellate level with reasoning that is equally applicable to the motion for new trial context. As I explained- In the state of Tennessee. In the state of Tennessee, because in the state of Tennessee, if the error was preserved at trial, during the trial itself, then a court will have ruled on it, which is what Martinez was concerned about. That's straight from Davila. And if they did not preserve it at the trial itself, and they didn't raise it until the motion for new trial, under Tennessee law, it's reviewed for plain error. Because you have to both, under Tennessee law, you have to both raise it at the trial and in the motion for new trial stage. So the reasoning of Davila is equally applicable to the Tennessee structure of how these claims are preserved. And so that's why we do think that this is more like Davila and that the court should decline to expand, not only because this falls outside of the scope of what Martinez touched on. The reasoning does not apply, except for a narrow circumstances, and that doesn't justify the wholesale extension of the Martinez doctrine to the motion for new trial stage. Not to mention the equitable considerations and the grave harm that states face under an expanded Martinez exception, which harms finality interests for the state and for victims' families, and intrudes on state sovereignty. Because you have federal courts reviewing state convictions that state courts had no opportunity to address the challenge. Well, counsel, under what circumstance would a trial counsel to preserve an issue, raise an issue of ineffective assistance of counsel during the trial? Your Honor, they would not. Under Tennessee law, I want to be careful here, because I don't want to mix two things. But under Tennessee law, you do have the ability to raise ineffective assistance of trial counsel at the motion for new trial stage. This court, though, nonetheless, in Sutton v. Carpenter, held that Martinez v. Ryan applies in Tennessee. But when I'm saying trial counsel had preserved, I'm referring to a specific trial error and not ineffective assistance. So the failure to object, the failure to challenge a certain expert's evidence, those types of trial errors, they have to be contemporaneously objected to and included in the motion for new trial in order for it to be preserved for appeal. And how does that relate to the case we talked about earlier, Rockman, in which our court has explained that the Martinez exception applies to claims of ineffective trial counsel assistance and not merely to trial errors? Well, Your Honor, I'm quoting de Villa when I say that Martinez was concerned about trial errors and the Constitution attaches no right to effective assistance of counsel to everything that trial counsel does. It focuses on the stage of proceedings in which trial counsel has that right. That's the same answer I gave before. It's my same answer now. Your Honor, I would like to touch on the Shin v. Ramirez and the remand, because Petitioner claims that this should be remanded to the district court for further proceedings. And we do not think that that is appropriate, for one, because the district court rejected these claims, even considering the new evidence. So this court has to do something with these claims, or else it'll just go back down to the district court who could send it right back up, because nothing in the district court's decision turned on whether there was new evidence and whether it could be considered or not. The other thing is, I don't think the court should remand and further draw out two decades of litigation when Petitioner has failed to even gesture at what the theory would be for why this new evidence can be considered. And I think it's pretty clear why. Because any argument that Petitioner could make that Petitioner was not at fault for failing to introduce this evidence would cut directly against the argument that the Martinez v. Ryan exception applies. Petitioner's theory throughout this entire case has been that this evidence was available and that if only counsel had developed it and presented it, that they were ineffective in failing to do so. And that's the basis for trying to get in under Martinez. But if that's the case, Shin says that the Petitioner is at fault for failing to develop this evidence. And if the evidence was not available for some reason, then Petitioner can't fit in under the Martinez exception. So there's tension between the argument that Petitioner is not at fault and the argument that this applies for the Martinez v. Ryan. I mean, maybe I'm misunderstanding, but I thought Shin said Petitioner's always at fault for failing to develop the record. Yes, you are. And aren't they saying at page 15 of their reply, I thought what they're saying is Petitioner's not at fault, so remand so we can develop the record. I thought that was their argument. Yes, you are. But their theory for why the Martinez exception applies is that this evidence was available and that counsel failed to develop it. And if that's true, then they are at fault. And if that's not true, then it's unclear how counsel could have been ineffective if the evidence was not available. So the point is that the at-fault requirement is in direct tension with how you get in the door through Martinez. If this Court has no further questions, I would ask that this Court affirm the judgment below. Thank you, Your Honor. Thank you. Ms. Henry, you've got five minutes. Thank you so much, Your Honor. And Judge Lepar, I hate to pick on you, but that's actually not what it says. Not what Shin says? Correct. Let me read it to you. You can tell me if I'm wrong. State Post-Convictions Counsel, ineffective assistance in developing the state court record is attributed to the prisoner. But Your Honor, what you said, I believe, what I heard you say, is that what the court in Shin said is that Petitioner will always be at fault for failing to develop the record. That does not flow from that language, Your Honor, because there are multiple ways in which a Petitioner cannot be at fault, not be culpable for failing to develop the state court record. And we begin looking at Michael Williams v. Taylor. In that circumstance, the Petitioner was not at fault for the juror misconduct claim because the information that counsel failed, that was not presented in the state court, was possessed by the juror herself, and so that was found to be an external impediment and not the fault of the Petitioner. And in fact, what the Supreme Court said in Shin was that they were not overruling Martinez. Martinez continues to exist and there is still a limited opportunity. But it has to be in the record. I mean, even Justice Sotomayor in dissent said they're effectively overruling Martinez and all they're leaving in place is if it exists in the state court record and you can point to it. Even she agrees with that. So that's nine justices saying that. I just simply, Your Honor, again, just disagree with that because Michael Williams v. Taylor still exists. There are things outside of trial counsel's fault. There are things outside the defendant, an external impediment, and there are decades of legal cases specifically dealing with this issue. And this is so important because it goes directly to Judge Moore's question of the state on argument with respect to the proof that Jeremy Beard used his sister's underwear in which to wipe himself off after masturbation. That did exist. That came after, right? That evidence, his affidavit is dated after the state proceedings. That is correct. That is in federal court. And so if we disagree with you on that point, do you agree you lose on all the Shin counts? I do not agree that we lose on all the Shin counts, Your Honor. I'm sorry. I'm just not going to be able to make that concession because my understanding of habeas law, again, I live in this stuff every day, is that if under Terry Williams' case, sorry, Michael Williams' case, I get them confused. They came out the same day. Same day Robert Coe was executed. Terry Williams says if the defendant is not culpable for failing to develop, then 2254E2 does not apply. It does not apply. And so the question is whether or not he culpably failed to develop. All Shin did is remove from the question about whether or not he culpably failed to develop from the calculation of whether or not it was ineffective assistance of post-conviction counsel. You can have both things. One is not exclusive of the other. And with respect to the evidence that Jeremy Beard is likely the person who left the very few sperm heads, not semen and not sperm. By the way, my opposing counsel continued to say sperm. There was no sperm. What we heard was maybe one sperm head is what Squibb's other partner at TBI found. Very, very important. Sperm head does not equal semen. Please look at Megan Clement's testimony. Please look at Exhibits 14 and 13 in the state court record. Because that combined with what we know to be a fact, what we know to be true, is that the most likely contributor would be the brother. And that changes this case completely. And frankly, may well even get us through the exceptions in 2254E2 with respect to evidence of innocence. But again... But why is that? I mean, the brother was there. You knew there was a brother. Why couldn't counsel have developed the brother evidence at trial? I don't understand that. The record shows, Your Honor, that he was a juvenile and that they were not allowed to talk to him. So, we were not allowed to talk to him until after he became of age. And then when he became of age, he provided this information, which is incredibly exculpatory. We're not allowed by law? You can't examine witnesses who are children in Tennessee? The family... Well, again, we have an ineffective assistance of trial counsel. No, I'm just saying, when you say not allowed, I'm wondering if there was some legal impediment or what does not allowed mean? Well, there's no right to deposition. In Tennessee, in criminal cases. And the mother would not allow her child to be questioned by defense counsel. So, you can't really override a mother saying, you're not going to talk to my son. But this, again, does go to ineffective assistance of counsel. There are other things that trial counsel should have done. We'll agree with that. But just because trial counsel should have done doesn't mean that my client failed to develop. That's a term of art that is specific to AETPA. Thank you. Oh, I'm so sorry. I see that my time has expired. I apologize. For all of those reasons, and because the evidence was, as the state court said, at 1173 of the record, the evidence of rape was a close call. We ask this court either to reinstate the panel opinion because the en banc petition actually has basically been abandoned in supplemental briefs by the state, or to simply remand for a new trial. Thank you. All right. Thank you, Ms. Henry. Thank you, Mr. Rice. We really appreciate your helpful briefs and arguments. The case will be submitted, and the clerk may adjourn court. This honorable court is now adjourned.